ACCEPTED
01-15-00148-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/23/2015 3:09:14 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00148-CV

_____

IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/23/2015 3:09:14 PM

CHRISTOPHER A. PRINE
Clerk

_____

CITY OF NASSAU BAY, TEXAS,
*Appellant*,

*v.*

H. RAY BARRETT and 1438 KINGSTREE LANE
*Appellees*.

_____

On Appeal from the 152nd Judicial District Court
of Harris County, Texas
Trial Court No. 2013-10661

_____

**APPELLANT CITY OF NASSAU BAY TEXAS' REPLY BRIEF**

_____

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY

William S. Helfand
State Bar No. 09388250
Attorney-in-Charge
Charles T. Jeremiah
State Bar No. 00784338
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 654-9630
Telecopier: (713) 658-2553

ATTORNEYS FOR APPELLANT
CITY OF NASSAU BAY, TEXAS

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................i

TABLE OF AUTHORITIES ...............................................................................ii

I.      Overview of Appellees' Reply ........................................................1

II.     Dispositive Material Facts Are Undisputed ...................................2

III.    Appellees' Due Process Allegation is Specious................................3

IV.     Straub Statement is not Competent Evidence ...................................6

V.      Building Inspector Not Final Policy Maker .....................................8

VI.     Conclusion .......................................................................................11

CERTIFICATE OF SERVICE ................................................................v

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bass v. Parkwood Hosp.*,
180 F.3d 234 (5th Cir. 1999) ...........................................................8

*Bennett v. City of Slidell*,
728 F.2d 762 (5th Cir. 1984) .............................................................9

*Campbell v. City of San Antonio*,
43 F.3d 973 (5th Cir. 1995) .............................................................10

*City of Houston v. Aspenwood Apartment Corp.*,
1999 WL 681939 (Tex.App. – Houston [1st Dist.] 1999,
pet. den.).......................................................................................10

*City of Houston v. Leach*,
819 S.W.2d 185 (Tex.App. – Houston [14th Dist.] 1991 no
pet.) ..............................................................................................10

*City of Lubbock v. Corbin*,
942 S.W.2d 14 (Tex.App. – Amarillo 1996, pet. den.) .......................9

*City of Paris v. Abbott*,
360 S.W.3d 567 (Tex.App. – Texarkana 2011, pet. denied)................5

*Cox v. City of Dallas*,
2004 WL 2108253 (N.D. Tex. 2004) (unpublished)..........................10

*Democracy Coalition v. City of Austin*,
141 S.W.3d 282 (Tex.App. – Austin 2004, no pet.)............................8

*DePree v. Sanders*,
588 F.3d 282 (5th Cir. 2009) .............................................................4

*Dodge v. Durdin*,
    187 S.W.3d 523 (Tex.App. – Houston [1st Dist.] 2005, no
    pet.) ...............................................................................................7

*K.D. Pool and Ven-Ken, Inc. v. Johnson County, Texas*,
    2002 WL 245973 (N.D Tex. 2002) (unpublished) ..............................9

*Lee v. Whispering Oaks Home Owners' Ass'n*,
    797 F.Supp.2d 740 (W.D. Tex. 2011) ..................................................6

*Merritt v. Harris County*,
    775 S.W.2d 17 (Tex.App. – Houston [14th Dist.] 1989,
    pet. den.)...........................................................................................8

Statutes

City Ordinance ............................................................................................1

City's Zoning Ordinance .............................................................4, 8, 10

Policymakers act.........................................................................................9

Texas Local Government Code § 211 ........................................................6

Zoning Ordinance ......................................................................................3

iii

Appellant, City of Nassau Bay, Texas ("the City") replies to Appellees' Response Brief.

## I.  Overview of Appellees' Reply

In their Response, Appellees urge a myopic and piecemeal analysis which distorts both the factual background and the applicable law in this case.  As set forth in the City's opening brief, when Appellee refused to remove his unquestionably noncompliant structure, the City filed this action.  Appellee filed a counterclaim against the City alleging, solely, a deprivation of his right to due process.  In the Record Review, however, Appellee received far more process than the Constitution requires.

Appellees could have, but decided not to, appeal the decision of the Zoning Board of Adjustment, that uphold the Building Official's determination and denied Appellee a variance.  Nevertheless, Appellees continue to claim through this impermissible collateral attack that the building official simply "got it wrong" in finding that Appellees' structure was not permitted by City Ordinance, originally or reconstructed.  Appellees' allegations, even if true, do not present a constitutional claim and, as discussed in the City's opening brief, because Appellees did not file the statutorily required appeal, the trial court simply had no jurisdiction to review the decision, even if it was illegal.

1

Instead of analyzing whether the building official and/or Zoning Board of Adjustment made the correct decision, the only issues properly before the Trial Court are whether (1) Appellee was deprived of his right to due process; and (2) whether an unconstitutional City policy was the moving force behind such a deprivation.

In their response brief, Appellees urge this Court to, in effect, mandate that the City of Nassau Bay allow what is now, and always has been, an unquestionably *illegal* nonconforming condition that violates, in addition to Appellant's code, health and safety provisions of virtually every residential building code in this state. In other words, Appellees ask the Court to force the City to accept Appellees' admitted violation of the Code and except him from an otherwise appropriate and fully constitutional restriction.

## II. Dispositive Material Facts Are Undisputed

It is undisputed that, long prior to Appellee Barrett's construction of his bath house, the City enacted a zoning ordinance which contained a minimum seven foot side setback [C.R. 353]. For accessory structures, the setback is three feet. [C.R. 339]. It is undisputed Appellee Barrett's structure has *zero* setback.[1] These setback requirements were in effect before Appellees' structure was built and have been ever since. In 1992 Appellee Barrett fixed his structure to the fence running along

---

[1] Hence, it makes no difference whether the structure was an "accessory." It undisputedly violated the City's setback requirement either way.

2

the property line, bringing his residential structure in hazardous proximity to his neighbor's and in undisputed violation of both setback requirements.[2] To be sure, Appellees next door neighbor has firmly objected to the attachment of the structure to his fence. [C.R. 98-99].

Appellee Barrett's structure was not merely a nonconforming structure, it was an *illegal* nonconforming structure, and illegal *at the time it was constructed; i*t wasn't "grandfathered" in. Without a variance, which Appellee Barrett concedes he never obtained, Barrett has no right to maintain a structure which violates the City's building Code, even if it was one hundred percent intact. The Building Inspector had no power to grant variances from the Zoning Ordinance, by the terms of the Ordinance or otherwise. Notably, Barrett does not claim the setback requirement which his structure undisputedly violates is unconstitutional, only that the City should not be permitted to enforce it against *him*.

## III.   Appellees' Due Process Allegation is Specious

In their attempt to persuade the Court, Appellees mislead the Court on a simple issue of law. A constitutional claim cannot rest on a Building Official's ability to articulate the nuances of his job, or even his understanding. To support their position, Appellees attack Mr. Boles or attempt to make him look

---

[2]   Notably, the enclosure occurred nearly *ten years after* Hurricane Alicia, demonstrating the misleading nature of Appellees' argument that the Hurricane "affected the City's permitting process."

3

incompetent because he didn't answer *hypothetical* questions about the building code to their satisfaction or take his comments out of context. But undoubtedly, these questions are simply not material. The City's Zoning Ordinance is in the record. [C.R. 149-425]. Mr. Boles' articulation of its requirements or procedures does not supersede the black letter of the document and nothing changes Appellees' inarguable noncompliance.

As discussed in the City's opening brief, Appellee Barrett had no property right or interest in a nonconforming structure; no one does. Appellee fails to demonstrate any such interest as would be critical to the assertion of a due process claim. *See*, *DePree v. Sanders*, 588 F.3d 282, 290 (5th Cir. 2009). Accordingly, Appellees' due process claim fails at the outset.

Nor does the contention that Boles changed Appellees request for an appeal to the Zoning Board of Adjustment. Soon after Larry Boles and Mary Chambers examined the structure, and before Appellee Barrett had even returned from his lake house, Boles and Chambers discovered Appellee had never obtained a variance from the City and Appellee admittedly could not produce one. When Chambers and Boles realized Appellee was required to have a variance for his clearly illegal nonconforming structure, Boles assisted Appellee by broadening the scope of Barrett's request for review. Importantly, this change to the form in no way limited Appellees' ability to present his position to the Zoning Board of

4

Adjustment. But, even if, *arguendo,* it did those were issues Barrett was required to raise to the Board and, if not resolved to his satisfaction, on approval in accordance with the statute.

Moreover, it remains undisputed that Appellee Barrett had notice of the hearing, was heard twice, offered all the documents, testimony and argument he wished and was fully heard. Appellee Barrett admitted unequivocally that, irrespective of what Boles wrote on the form, in the first hearing Barrett challenged **both** the Building Official's determination (the stop work order), and he sought a variance and that the Zoning Board considered and denied both requests. [C.R. 426-27; *see also*, C.R. 91-93, 113-114]. Damning to his argument are both the law and Barrett's knowledge that his only remedy to challenge the Board's decision was to timely file suit, which he admittedly failed to do. [C.R. 426-27].

Appellee Barrett was given two hearings and he was permitted to argue the stop work order was invalid, that he didn't need a variance, and that he should be granted a variance. Having been permitted the opportunity to make, and have actually made such points and has them heard and considered, any due process requirement was clearly satisfied. *City of Paris v. Abbott*, 360 S.W.3d 567, 582 (Tex.App. – Texarkana 2011, pet. denied). After this, thorough hearing, Appellee Barrett could have, but chose not to, appeal the City's discussion to uphold the stop work order to a District Court within ten days under the mandatory statutory

mechanism for resolving his dispute. Appellee Barrett could have argued the stop work order was invalid and that a variance should have been granted. He admittedly chose not to address any of these issues further, Barrett accepted the decision, until the City chose to enforce it. [C.R. 137, 426-27].

Equally, there is no deprivation of substantive due process. Such claims are reviewed under a rational basis analysis. Under such an analysis "[t]he Court may ask whether there was a conceivable factual basis for the specific decision made and nothing more." *Lee v. Whispering Oaks Home Owners' Ass'n*, 797 F.Supp.2d 740, 750 (W.D. Tex. 2011). Undisputedly, the evidence is this case demonstrates a building official received a complaint, found no permit for the job, and issued a stop work order because no variance had ever been issued for a structure in clear violation of City Code. These circumstances inescapably demonstrate a rational basis for City's enforcement of its unquestionably constitutional zoning requirements. Importantly, however, if Appellees disagree with the City, they were statutorily required to address that under the mechanism provided under Texas Local Government Code § 211.

## IV. Straub Statement is not Competent Evidence

In light, particularly, damning controlling statutes and jurisprudence Appellees' reliance on the purported statement of Andy Staub is both irrelevant and unavailing. First and foremost, Andy Straub's statement doesn't bear on any

6

material issue before the Court: whether Appellee was deprived of due process or whether such a deprivation is attributable to the City. However, Straub's statement is plainly and undisputedly incompetent information. Remarkably, while conceding the Straub statement is neither sworn nor testimony, Appellees nonetheless rely heavily, though misguided, on this incompetent statement in their Response. Indeed, in light of Appellees' acknowledgement Straub's statement is not admissible, Appellees' reliance would surprising except when the Court observes that Appellees have absolutely no competent evidence to support their claims. The City timely and firmly objected to Straub's statement being offered as summary judgment evidence. [C.R. 619, 624]. Regardless, objections to the *substance* of this document are not waived on appeal. *See, Dodge v. Durdin*, 187 S.W.3d 523, 532 (Tex.App. – Houston [1st Dist.] 2005, no pet.).

Because Appellees now attempt to exploit the absence of a written ruling on the City's admittedly proper objection, the City moves this Court separately and contemporaneously, in the interest of justice, to permit leave supplement the record with the transcript of the hearing on the plea to the jurisdiction where the Judge Schaffer's implicit, if not express ruling – finding that the Straub statement is *not* competent admissible evidence, is clear.

Indeed, the statement itself contains no assertion that it is sworn, contains hearsay and conclusory assertions such as the obviously false assertion that

Appellee's structure "complied with all codes and ordinances at the time" which is indeed, an objectionable conclusion of law.

## V. Building Inspector Not Final Policy Maker

Appellees also bore the burden of demonstrating a City policy was the moving force behind the deprivation, here their contention that the building inspector was the final policymaking authority. *See, e.g., Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999).[3] "The identification of policymaking officials is a question of state law which may include valid local ordinances and regulations. It is not a question of federal law and it is not a question of fact." *Merritt v. Harris County*, 775 S.W.2d 17, 24 (Tex.App. – Houston [14th Dist.] 1989, pet. den.) (citations omitted). The citizens of Nassau Bay have not empowered their Building Inspector to formulate policy on behalf of the City. In fact, he is not even the final *decision* maker. The City's Zoning Ordinance embodies the City's policies on zoning, the building official's duties, and permitting. "The authority to make municipal policy is the authority to make final policy without any constraints on the official's discretionary decisions." *Id.* Although the Building Inspector makes decisions, they are not final, nor do they amount to policymaking.

---

[3] "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 289 (Tex.App. – Austin 2004, no pet.) (emphasis in original) (citation omitted).

For attribution, "[l]iability must rest on official policy, meaning the city government's policy and not the policy of an individual official." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). Of course, policymaking authority "is more than discretion and it is far more than the final say so…" *Id.* "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in place of the governing body in the areas of their responsibility." *Id.*

In *Bennett*, as in this case, the building inspector's job was to execute or administer the city policy, established by the city council in its building code. *Id*, at 769-770. His decisions were appealable to the board of zoning adjustments. Although his decisions were discretionary and ministerial, this didn't amount to policymaking authority within the meaning of the law. Accordingly, the Fifth Circuit Court of Appeals unequivocally held that the building inspector was not a policymaker whose acts could subject the City to liability. Indeed, there appears to be no reported case where the either the Fifth Circuit Court of Appeals or any Texas Court has ever held that a building inspector was a final policymaker for purposes of attribution under the *Monell* analysis. See also, *City of Lubbock v. Corbin*, 942 S.W.2d 14, 20 (Tex.App. – Amarillo 1996, pet. den.) (Building Code Inspector, whose decisions were appealable to the Building Board of Appeals, was not final policymaker); *K.D. Pool and Ven-Ken, Inc. v. Johnson County, Texas*,

2002 WL 245973 at *5 (N.D Tex. 2002) (unpublished) (Director of County Public Works Department as a matter of law was not a final policymaker for the county); *City of Houston v. Aspenwood Apartment Corp.*, 1999 WL 681939 at *9 (Tex.App. – Houston [1st Dist.] 1999, pet. den.) (building official not final policymaker).

Indeed, "[t]o infer the existence of a city policy from the isolated misconduct of a single, low level officer and then to hold the city liable on the basis of that policy would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*." *City of Houston v. Leach*, 819 S.W.2d 185, 200 (Tex.App. – Houston [14th Dist.] 1991 no pet.), citing, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831, 105 S.Ct. 2427, 2440 (1985). "[L]iability does not attach merely because a city employed a tortfeasor." *Cox v. City of Dallas*, 2004 WL 2108253 (N.D. Tex. 2004) (unpublished), *citing, Monell* at 694, and *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

Nowhere did the City vest the building official with the power to formulate City policy. The City has enacted its zoning and permitting policies through an Ordinance passed by the City Council.[4] Further, as authorized by the State of Texas, the City of Nassau Bay has elected to form a Zoning Board of Adjustment which can review and reverse the Building Official's decisions. The City's Zoning Ordinance makes clear, the "Building official" is "charged with the administration

---

[4] Appellees did not complain of any action by the Nassau Bay City Council [C.R. 112].

10

and the enforcement of the zoning ordinances and building code of the City of Nassau Bay, Texas." [C.R. 398].

Indeed, Appellees own argument undermines his contention. Appellees throughout their brief claim that "Boles exceeded his authority," and acted "arbitrarily," and was not "empowered to evaluate what constituted 50 percent of the value." [Response, p. 33]. He did not establish City policy, and according to Plaintiff he did not even carry out City policy as set forth in the Ordinance. A finding that the building inspector was a final policymaking authority of the City would be contrary to the record and would flout the letter and spirit of *Monell*.

## VI.   Conclusion

Clearly, Appellees failed to establish a deprivation of their right to due process. Even if they were deprived of due process, there is no basis for attribution to the City of Nassau Bay, as there is no showing that City policy was the moving force behind any such deprivation. Accordingly, City of Nassau Bay, Texas prays that this Court reverse the trial court's denial of its Plea to the Jurisdiction, and render that the Appellee's Counterclaim be dismissed for lack of subject matter jurisdiction, and for general relief.

11

Respectfully submitted,

/s/ *William S. Helfand*
William S. Helfand
Attorney-in-Charge
SBOT No. 09388250
bill.helfand@chamberlainlaw.com
Charles T. Jeremiah
SBOT No. 00784338
Charles.jeremiah@chamberlainlaw.com
ATTORNEYS FOR APPELLANT

OF COUNSEL:

CHAMBERLAIN, HRDLICKA, WHITE,
        WILLIAMS & AUGHTRY
1200 Smith Street, Suite 1400
Houston, Texas  77002-4401
(713) 654-9630
(713) 658-2553 (Fax)

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief has been served via CM/ECF System and/or by CD and certified mail, return receipt requested, on this 23rd day of July 2015, to:

Iain Gordon Simpson
Simpson, P.C.
1333 Heights Blvd, Ste 102
Houston, Texas 77088
Email: iain@simpsonpc.com

Jeffrey N. Todd
The Law Firm of Alton C. Todd
312 S. Friendswood Drive
Friendswood, Texas 77546
Email: Jeff@actlaw.com


/s/ *William S. Helfand*

1949618.2
130083.000001